CAMPBELL, Judge.
In these two appeals, consolidated for purposes of the record with each other and with a previous appeal concerning the same subject matter (I.J.E., Inc. v. Timely Publications, Inc., 574 So.2d 147 (Fla. 2d DCA 1991)), appellant, I.J.E., Inc. (I.J.E.), main *1297 tains that the court improperly required I.J.E. to pay appellee, Timely Publications, Inc., royalties on video game versions of the Wheel of Fortune television game show that were developed subsequent to the February 2,1990 final judgment which was the subject of the previous appeal. That final judgment determined those versions for which I.J.E. owed Timely royalties at that time and in the future. We agree that I.J.E. has, by subsequent orders which are now before us on appeal, been required to pay royalties that were not determined to be due by the February 2, 1990 final judgment.
In the previous appeal we affirmed without opinion the final judgment entered on February 2,1990. In that judgment, which also underlies the subject matter of the two appeals now before us, appellees Timely Publications, Inc., Roderick J. Keenan, Mark P. Kalbli and Leonard S. Sullivan (collectively referred to as Timely) recovered against I.J.E. compensatory and punitive damages arising out of breach of contract and fraud and equitable relief in the form of reformation of contract.
The subject matter of the action below which resulted in the final judgment of February 2, 1990, was an agreement dated March 3, 1987, whereby Timely was to develop computer video game programs for I.J.E. simulating the Wheel of Fortune television game show. I.J.E. was then to market versions of the computer programs which were compatible with various brands of computer systems and to pay royalties to Timely on the sales of those versions of the games that were developed using Timely’s computer technology. Timely developed such versions of the Wheel of Fortune game for use with Commodore, IBM and Nintendo computer systems.
Disagreements arose over the amount of royalties due. The dispute concerned whether Timely’s computer technology or material had been used by I.J.E.’s independent contract programmers in the development of the several versions of the game being marketed by I.J.E. The final judgment of February 2, 1990, resulted from a jury trial and determined that Timely was entitled to royalties on sales of copies of the Wheel of Fortune computer game programs developed and sold by I.J.E. for the Commodore, IBM and Nintendo versions of the program. The final judgment determined that the March 3, 1987 agreement was nonexclusive and did not require I.J.E. to use only Timely’s technology or material in developing versions of the Wheel of Fortune game. The final judgment further determined that if I.J.E. or one of its contract programmers did in fact use Timely's material in the development of a version of the computer program, Timely would be entitled to royalties on that particular version.
The sole issue presented by both appeals now before us is whether the final judgment of February 2, 1990, in and of itself, without additional proof of the use of Timely’s material, entitles Timely to royalties on Nintendo versions of the Wheel of Fortune computer game developed and marketed subsequent to the previous trial and resulting final judgment. We hold, in regard to the Nintendo Gameboy version of the game only, that further evidentiary proceedings are necessary to determine whether Timely’s materials were used in developing the Gameboy version that would entitle Timely to royalties on its sales.
The facts previously established show that I.J.E. entered into a licensing agreement with Nintendo of America, Inc. to develop a Wheel of Fortune game compatible with its Nintendo Computer Entertainment System (NES). Sometime after IJ.E.’s agreement with Timely, I.J.E. contracted with Rare-Coin It, Inc. (“Rare”) to prepare and design a Nintendo (NES) version of the Wheel of Fortune game. While an employee of Rare testified he did not utilize Timely’s material in developing the Nintendo NES versions of the game, the jury determined otherwise. Those Nintendo NES versions marketed by I.J.E. included the original “edition” of the Wheel of Fortune program, the New Junior Edition and the All New Family Edition. After entry of the final judgment of February 2, 1990, I.J.E. and Nintendo of America, Inc., on May 15, 1990, entered into a new licensing agreement whereby I.J.E. was to devel *1298 op, produce and sell a Wheel of Fortune video computer program for use with Nintendo’s new “Gameboy” product. The “Gameboy” product developed by Nintendo is a high quality advanced design video game system that utilizes a hand-held console unit. By contrast, the Nintendo NES system, for which Rare developed a version of the Wheel of Fortune game for I.J.E., utilizes a standard console and keyboard unit and a separate standard display screen.
Subsequent to the final judgment of February 2, 1990, the trial judge entered a stay of that judgment pending its appeal to this court. The stay was conditioned upon I.J.E. posting a supersedeas bond to secure the money judgment and paying into an interest-bearing trust account royalties on all sales of the Commodore, IBM and Nintendo versions of the Wheel of Fortune game in accordance with the March 3, 1987 agreement as reformed by the final judgment. The stay order further provided that those funds would be released to the party prevailing on appeal upon issuance of the mandate.
The final judgment itself provided:
Beginning with sales of the ... Nintendo Wheel of Fortune computer programs after October 1989, the March 3, 1987 Agreement shall be reformed to read as follows:
[[Image here]]
(b) Paragraph 6.2 of the March 3, 1987 Agreement shall be reformed to provide for a 2 percent royalty on copies of the program, including specifically Commodore, IBM and Nintendo Wheel of Fortune programs, so as to read:
6.2 Payment
As full payment to the author, Publisher shall pay to the Author a royalty of 2 percent of the Net Wholesale Price of copies of the Program or versions thereof including specifically Commodore, IBM and Nintendo Programs, accepted and approved by Publisher hereunder which copies are sold for use within the Universe.
(Emphasis added.)
During the pendency of the first appeal a dispute arose as to the royalties being deposited into the trust account pursuant to the stay order. I.J.E. had been depositing royalties on only the original edition of the Nintendo version of the program, and Timely contended royalties were due to be deposited on the New Junior Edition, the All New Family Edition and the “Game-boy” product.
In settling the dispute, I.J.E. announced to the trial judge that it had agreed to make the royalty deposits on all Nintendo versions. In doing so, I.J.E. stated that it reserved the right to go back to the trial judge in the event the final judgment was affirmed on appeal and seek clarification as to whether I.J.E. was obligated to pay royalties on new Nintendo versions of the program that it contends were not produced utilizing Timely’s materials.
After our previous affirmance of the final judgment, I.J.E. filed such a motion seeking clarification of the effect of the stay order and final judgment on sales of subsequent Nintendo versions of the program. I.J.E.’s motion also requested an evidentiary hearing for the purpose of demonstrating whether Timely’s materials had been used by I.J.E.’s independent contract programmers in the development of the subsequent Nintendo versions of the program. The trial judge on March 6, 1991 denied I.J.E.’s motion without an evidentia-ry hearing and ordered all royalties deposited pursuant to the stay order to be paid to Timely. It is that order that is the subject of the appeal before us in our case number 91-00974.
I.J.E. argues that the final judgment and stay order relating to deposit of royalties on sales after the final judgment should not have prospective application to sales of Nintendo versions that were not the subject of the trial leading to the final judgment of February 2, 1990. In support of its position, I.J.E. points to that part of the final judgment itself that provides:
*1299 The Defendant was not bound to use only the Plaintiffs in developing the several versions of the Wheel of Fortune computer program since the Agreement entered into between the parties was non-exclusive. If, however, the Defendant or one of its contract programmers used Plaintiffs’ material in the development of a version of the computer program, the plaintiffs were entitled to royalties on that particular version.
Timely argues that the trial court was without jurisdiction to hear I.J.E.’s motion for clarification as it was not a motion properly the subject of Florida Rule of Civil Procedure 1.540 and, even if it were, it was not timely as it was filed more than one year after the entry of the final judgment. We disagree and conclude that LJ.E.’s motion was properly within the scope of 1.540(b)(5) seeking to avoid the prospective application of a judgment or decree and, therefore, not subject to the one year limitation. The ruling on that motion is before us on appeal in our case number 91-00974.
In addition to its motion for clarification, I.J.E. also filed a separate action for declaratory and supplemental relief wherein it sought to determine its right under the final judgment to refuse to pay royalties to Timely for sales of the New Junior Edition, the All New Family Edition and the Game-boy versions of the Nintendo programs. The trial judge entered partial summary judgment of liability in favor of Timely on I.J.E.’s entire declaratory judgment complaint. That summary judgment is the subject of the appeal before us in our case number 91-02802.
We find that the trial judge erred in entering summary judgment for Timely in regard to the Gameboy product and LJ.E.’s obligation to pay Timely royalties thereon based upon the February 2,1990 final judgment. We conclude that there is an unresolved issue of fact as to whether Timely’s program material was utilized in development by I.J.E. of the Gameboy program for Nintendo which occurred after the February 2, 1990 final judgment. Summary judgment was not proper where I.J.E. filed the unrefuted affidavit of an individual involved with LJ.E.’s development of the Gameboy Wheel of Fortune program stating that Timely’s material was not used in the development of the Gameboy program.
We conclude that the res judicata effect of the final judgment is not dispositive of the right of Timely to royalties on the Gameboy program developed after entry of the final judgment. Accordingly, we reverse the partial summary judgment only as it pertains to Gameboy products. We also reverse the order of March 6, 1991, which disbursed the royalties on the Game-boy program that were deposited pursuant to the stay order. Those Gameboy royalties shall be redeposited in the trust account to await the final determination of I.J.E.’s declaratory action as it pertains to the Gameboy program. We otherwise affirm the orders in both appeals. We remand for further proceedings. Affirmed in part and reversed in part.
DANAHY, A.C.J., and FRANK, J., concur.